NELSON P. COHEN
United States Attorney

DAVID A. NESBETT
Special Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, Room 253, #9
Anchorage, Alaska  99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: david.nesbett@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 1:06-cr-00002-JWS |
| | ) | |
| Plaintiff, | ) | **UNITED STATES'** |
| | ) | **RESPONSE TO** |
| vs. | ) | **DEFENDANT'S** |
| | ) | **SUPPLEMENTAL MOTION** |
| BILLY WAYNE HAYNES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

I.   INTRODUCTION

The defendant, Billy Wayne Haynes, in supplemental briefing, seeks to reopen the evidentiary hearing previously held based on the recently provided recorded oral testimony of Detective Stevener during his application for the search warrant, and wishes to re-litigate the issue of whether Sitka Police had valid

consent to search Mr. Prado's trailer. There is no substantive difference between the recorded testimony of Detective Stevener and his recollection of the oral testimony described during the evidentiary hearing. Furthermore, Officer Conklin performed a proper inventory search of the defendant's personal items at the Sitka jail pursuant to the standard operating procedures of the jail. The evidence seized as a result of the officers' entry, and the evidence seized as a result of the proper inventory search, therefore, should not be suppressed.

II.  ARGUMENT

    1.  Detective Stevener Had Consent to Enter Mr. Prado's Trailer

Haynes argues that the evidentiary hearing needs to be reopened because a review of the recorded oral testimony of Detective Stevener reflects that he was "uncertain of the 'consent' issue." (Defendant's Supplemental Brief at 2). This is not an accurate interpretation of Detective Stevener's recorded testimony. Detective Stevener and the court discussed the following as regards Mr. Prado's consent for the Sitka Police to enter his trailer:

> Q: [A]re you here out of an abundance of caution, or is there some other factor which makes you concerned about operating on the basis of Marcel Predo's consent?
>
> A: There is a concern out of caution. . . . [T]he concern is that Mr. Predo doesn't know who's living there. The person who's living there may or may not have some sort of belief that they

>   have the ability to live there.
>
>   . . .
>
>   Q:   And [Mr. Prado] disavowed any knowledge that any person would be living there?
>
>   A:   That's correct.

Transcript of Application for State Search Warrant at 5-6.

Mr. Prado's consent provided to officers was clear. Mr. Prado owned the trailer. He never agreed to let anyone live there. He never entered into a rental agreement with anyone concerning the use of the trailer. In fact, according to Mr. Prado, the trailer was uninhabitable. Mr. Prado hired Mr. Bebe to work on the trailer precisely because Mr. Prado wanted to create a residence that could be converted into a rental unit. Whether another person felt that he was able to live there is immaterial to the extent that he was not living there with the permission from the owner. Whomever may have felt able to live there was simply "crashing" unlawfully in Mr. Prado's trailer without the knowledge of the trailer's owner. That person, whether it be Mr. Bebe or Mr. Haynes, does not have the right to refuse the officers' entry into the trailer after the lawful owner already provided unequivocal consent to enter. Officers' application for the search warrant was a result of the officers discretionary use of caution.

Mr. Prado's consent to enter his trailer was unequivocal. Detective Stevener applied for the search warrant out of an abundance of caution. Detective Stevener's testimony before the issuing court is not distinguishable from his testimony before this court during the evidentiary hearing. There is no issue regarding consent that would warrant reopening the evidentiary hearing.

### 2. The Search of Haynes' Property at Jail Was Proper

The Supreme Court has identified three rationales for an inventory search: to protect the owner's property in public custody; to protect the police against claims for lost property; and to protect the police and community from potential danger. South Dakota v. Opperman, 428 U.S. 364, 369 (1976); see United States v. Johnson, 820 F.2d 1065, 1072 (9th Cir. 1987). Inventory searches must be conducted according to standard agency procedures. United States v. Mancera-Londono, 912 F.2d 373, 375 (9th Cir. 1990). Any discretion must be exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity. Id. Inventory procedures need not be written to be standardized. Id.

An inventory search is only lawful under federal law if it also conforms to state law. United States v. Cormier, 220 F.3d 1103, 1111 (9th Cir. 2000). Federal law on inventory searches by state or local police officers requires that they must

be conducted in accordance with the official procedures of the relevant state or local police department. Id. Thus, state law necessarily influences admissibility determinations even in federal court. Id. Under Alaska law, there are only two valid justifications for a pre-incarceration inventory search, but they closely track the federal standards. The first is to prohibit the introduction of weapons and other contraband into the jail. Nelson v. State, 781 P.2d 994 (Alaska Ct. App. 1989). The second is to protect the inmate's property and to protect the jail against claims of loss or damage. Id.; see Reeves v. State, 599 P.2d 727, 735 (Alaska 1979).

In D'Antorio v. State, 926 P.2d 1158 (Alaska 1996), the Alaska Supreme Court held that a detailed examination of documents by a law enforcement officer exceeded the permissible scope of an inventory search under federal and Ohio state law. The Court explained that the search, which included reading each document in such detail that the officer knew that the defendant's name frequently appeared in the documents, exceeded the permissible scope of the search because the detailed reading of the documents constituted a serious intrusion of the defendant's reasonable expectation of privacy and not merely a cursory review of the documents in an attempt to identify them. Id. at 1164.

Jail Officer Betty Conklin prepared Mr. Haynes for transport from Sitka Jail

to Lemon Creek Correctional Facility. Pursuant to standard operating procedure before prisoner transport, Officer Conklin searched Haynes' personal items in order to prevent the introduction of weapons or contraband into Lemon Creek jail, to protect the inmate's property, and to protect the jail against claims of loss or damage. During the search, Officer Conklin discovered slips of paper commonly used to transport small amounts of controlled substances in Haynes' wallet. She was aware of the charges against Haynes and knew by his admission to her that he was an unlawful user of controlled substances.

Officer Conklin opened the small slips of paper to see whether they contained controlled substances. When she did so, she immediately noticed words such as, "* SHIT TO DO *," "Fuse for bomb," "Pick-up Fuse (Explosive)," "find Hollow needle," and "pick up some pipes." (Defendant's Supplemental Brief, Exhibit A, p. 1 and 2). Officer Conklin, in the process of determining whether the slips of paper contained controlled substances, could not have avoided seeing some of the items listed on the paper. Her search of the slips of paper was for the purpose of preventing the transportation of contraband within the jails and, in the process of identifying the items, observed the potentially incriminating material. Unlike the facts in D'Antorio, Officer Conklin's cursory perusal of the slips of paper in an attempt to identify whether they contained controlled substances was

not an affirmative decision to examine in detail otherwise innocuous documents that "touch upon intimate areas of an individual's personal affairs" (such as letters and checkbooks), Opperman, 428 U.S. at 380, and, thus, was not an unreasonable intrusion of Haynes' reasonable expectation of privacy. Rather, Officer Conklin recognized immediately the potential danger to law enforcement and the community that these slips of paper represented. Officer Conklin would have been remiss not to report to law enforcement the unavoidably seen items listed on the slips of paper. By following the standard operating procedures of the jail, Officer Conklin, therefore, did not violate Haynes' Fourth Amendment rights against unlawful searches and seizures.

### III.   CONCLUSION

The officers did not violate the defendant's Fourth Amendment rights. Mr. Prado gave explicit consent for the officers to enter his trailer. Moreover, Officer Conklin lawfully searched Haynes' personal items pursuant to the standard operating procedure of jail booking and inventory searches. Based on the foregoing, the officers did not violate the defendant's Fourth Amendment rights and, therefore, the evidence should not be suppressed.

RESPECTFULLY SUBMITTED this 6th day of October, 2006, in Anchorage, Alaska.

NELSON P. COHEN
United States Attorney

s/ David A. Nesbett
Special Assistant U.S. Attorney
222 West 7th Ave., #9, Rm. 253
Anchorage, AK 99513-7567
Phone: (907) 271-3668
Fax: (907) 271-1500
E-mail: david.nesbett@usdoj.gov

**CERTIFICATE OF SERVICE**
I hereby certify that on October 6, 2006,
a copy of the foregoing was served
electronically on Sue Ellen Tatter.

s/ David A. Nesbett