Sue Ellen Tatter
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
601 West Fifth Avenue, Suite 800
Anchorage, Alaska  99501
(907) 646-3400

Attorney for Defendant

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>BILLY WAYNE HAYNES,<br><br>　　　　　Defendant. | NO. 1:06-cr-0002-JWS<br><br>**OBJECTIONS TO INITIAL REPORT AND RECOMMENDATION RE: MOTION TO SUPPRESS EVIDENCE** |

　　　　　The defendant, BILLY WAYNE HAYNES, through counsel, objects as follows to the recommendation of the magistrate judge (Docket No. 54) regarding the defendant's motion to suppress evidence (Docket No. 15).

**I.　　OBJECTIONS TO FINDINGS OF FACT**

　　　　　Paragraph 8 (or another paragraph related to the same topic) should include the following important facts, testified to by Marcel Prado.  Jeremy Beebe was doing work on the trailer for Mr. Prado at the time of the search.  In return for the work, Jeremy Beebe would get an opportunity to buy or rent the trailer at a reduced rate.  Mr. Prado agreed that

Jeremy Beebe was thus acquiring an "investment" in the trailer because of his work. Jeremy Beebe brought another person into the trainer to do plumbing. Mr. Prato knew and authorized this work.

Paragraph 18 says that the search pursuant to a warrant was more "detailed" than the previous search. However, the previous, warrantless search was quite thorough, involving observation of small items on shelves and other details.

Paragraph 22 describes Officer Stevener looking in the black duffel bag only after obtaining a search warrant. However, the defense believes Officer Stevener did look into the black duffel bag on the first warrantless search. (The defense has not yet obtained the transcript of this hearing.)

Paragraph 26 states that Officer Conklin "could read the writing on the papers from the wallet in the course of making this inspection" [for drugs]. She claimed that she immediately read and digested the written information. However, the defense believes these additional facts from her testimony should be inserted: (1) she admitted that the dark, heavy writings were of innocuous government initials ("DMV" and "OCS") and (2) that the "fuse" and "bomb" writings were not written in bold or underlined.

Officer Conklin's statement in paragraph 51 is not accurate. She actually responded "I'm not illiterate," when asked why she read the papers.

## II.     OBJECTIONS TO LEGAL CONCLUSIONS

Page 9 states that Mr. Beebe had no "possessory interest in the trailer." However, Mr. Prado said that Jeremy Beebe's work in the trailer was for a future

"investment." The actions which were investment in future ownership here create a possessory interest and distinguishes Haynes' case from United States v. Yarbrough, 852 F.2d 1522 (9th Cir. 1988).

The defense disputes that Mr. Prado had authority to override Jeremy Beebe's possessory interest in the trailer, or that apparent authority can defeat lack of actual authority.  See, e.g., Chapman v. United States, 365 U.S. 610, 616-17 (1961) (cf. P. 11).

The defense respectfully disagrees that the defense had sufficient time to present testimony of Jeremy Beebe (page 12), an inmate.  The court gave only about 24 hours notice before the second hearing, which was insufficient time for the United States Marshals to serve a writ of habeas corpus on a prisoner.  Mr. Beebe was not available to the defense before the first hearing because his attorney had not authorized any contact.

The court "agrees" with Officer Conklin, on page 13, that reading the papers was a reasonable part of the inventory search.  The defense disagrees with this conclusion, especially in light of Exhibit A, where the incriminating phrases do not jump out of the lists, are not emphasized, and are buried in innocuous words, including love messages and notes about government agencies.  The reading of all the words was actually a search for evidence.

The defense objects to the implicit conclusion (pages 13-14) that Officer Conklin's description of the list reading as an inevitable adjunct of the search for contraband is credible.  (See, Exhibit A)  In light of Exhibit A, it is more reasonable to conclude that Officer Conklin was looking for verbal evidence.

The defense disputes the conclusion that D'Antorio v. State, 926 P.2d 1158 (1996) and other Alaska cases cited by the defense are not on point. These authorities clearly indicate that reading lists, words, sentences and numbers on documents is not a valid adjunct to an inventory search. See also, United States v. Johnson, 820 F.2d 1065, 1072 (9th Cir. 1987) (reading serial numbers of seized money not proper inventory search).

DATED this 13th day of October 2006.

Respectfully submitted,

s/Sue Ellen Tatter
Assistant Federal Defender
601 West Fifth Avenue, Suite 800
Anchorage, AK 99501
Phone:      907-646-3400
Fax:        907-646-3480
E-Mail:     sue_ellen_tatter@fd.org

Certification:
I certify that on October 13, 2006,
a copy of the **Objections to Initial Report and Recommendation Re: Motion to Suppress Evidence** was served electronically on:

David Nesbett
Assistant United States Attorney
U.S. Attorney's Office
222 West Seventh Avenue #9, Room 253
Anchorage, AK  99513-7567

s/Sue Ellen Tatter