UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| Plaintiff, ) | 1:06-cr-002 JWS |
| ) | |
| vs. ) | ORDER FROM CHAMBERS |
| ) | |
| BILLY WAYNE HAYNES, ) | [Re:  Motion at Docket 59] |
| ) | |
| Defendant. ) | |

## I.  BACKGROUND

Defendant Billy Wayne Haynes moved to suppress evidence obtained from four warrantless searches:

> (1) a search of a truck and backpack in Sitka, Alaska; (2) search of a trailer at Viskari Trailer Court #8, also in Sitka, on February 21, 2006, before the search warrant was obtained; (3) a search of the same trailer on February 22, 2006, after the search warrant service was completed; and (4) a warrantless search of Mr. Haynes' property by correctional officer Betty Conklin before Mr. Haynes' transport from Sitka to Juneau.[1]

Magistrate Judge Pallenberg conducted two evidentiary hearings relating to the searches.  Thereafter, he filed a report setting out his findings of fact and recommending that the motion be denied as to all four searches.[2]  After conducting an independent review, this court adopted his findings of fact and denied the motion to suppress as to all four searches.[3]

---

[1] Doc. 15 at 1.

[2] Doc. 54.

[3] Doc. 58.

Haynes filed a motion for reconsideration based upon evidence that he was unable to present at the original evidentiary hearings.[4] This court granted Haynes' request to hear the testimony of Jeremy Beebe, who is currently incarcerated, but was remodeling the trailer and renting Space 8 when the searches occurred. Beebe testified on October 31, 2006. Additional testimony from Marcel Prato was heard on November 1, 2006. Thereafter, this court made some new findings of fact, amended others, and re-adopted many earlier findings of fact in an order that also asked for supplemental briefing.[5] Defendant's motion for reconsideration is now ripe for decision.

The evidence presented in the motion for reconsideration pertains only to the search of the trailer on Space 8 on February 21, 2006, before the search warrant was obtained, and the search of the same trailer on February 22, 2006, after the search warrant service was completed. Both searches were executed based on the consent of Marcel Prato, the trailer's owner. The court's prior ruling denying defendant's motion to suppress as to the search of the truck and backpack and the search of Haynes' property by correctional officer Betty Conklin are not subjects of the motion for reconsideration.

## II.  DISCUSSION

The court's findings of fact in its earlier orders[6] are incorporated by this reference. In its most recent order, the court found that Jeremy Beebe rented Space 8, his leasehold for Space 8 continued through the end of February 2006, and he did not pay rent for the trailer for February. The court also found that Prato was the owner of the trailer in February 2006, and that Prato and Beebe had an oral agreement under which Beebe agreed to remodel the trailer. The agreement provided that if Beebe chose to purchase the trailer upon completion of the remodel, his work on the trailer would be treated as the equivalent of a down payment.

---

[4]Doc. 59.

[5]Doc. 68.

[6]Docs. 58 and 68.

Citing *United States v. Impink*,[7] Haynes first argues that with Beebe as a tenant, Prato, as the lessor, lacked authority to consent to an entry onto Space 8 by the Sitka police. Haynes contends that "even if Mr. Beebe had insignificant possessory rights in the trailer on February 21, 2006, the police still should not have entered the land."[8] The *Impink* case recites the general rule that a lessor cannot consent to the search of leased premises.[9] However, the case also recognizes that to the extent a lessor has the right to enter a property, a lessor may authorize entry by the police.[10] That is exactly the situation here with respect to Space 8. It is undisputed that Prato purchased and owned the trailer. It is also undisputed that Beebe, as the renter of Space 8, and Prato, as the owner of Space 8, mutually consented to the presence of the trailer on Space 8. Whatever the general rule might otherwise say about Prato's right to go upon Space 8, the specific factual circumstances here show that Prato had a right to enter upon Space 8 for the purpose of entering the trailer he owned, which was parked on Space 8 with Beebe's assent. Thus, Prato had authority to consent to an entry onto Space 8 by the Sitka police for the purpose of going inside Prato's trailer.

The court next considers the legitimacy of the consent searches conducted on February 21 and 22, 2006. Because the searches were conducted without a warrant, the government bears the burden of demonstrating that the searches were lawful.[11]

**Search on February 21, 1006**

"Because the Fourth Amendment protects 'people, not places,' [Haynes] must first demonstrate that he personally had a 'legitimate expectation of privacy' in the place searched or the thing seized."[12] The government argues that Haynes lacked an

---

[7] 728 F.2d 1228, 1232 (9th Cir. 1984).

[8] Doc. 69 at 4.

[9] *Id.* ("Generally, a lessor cannot consent to a search of leased premises.")

[10] *Id.*

[11] *United States v. Davis*, 332 F.3d 1163, 1168 n.3 (9th Cir. 2003).

[12] *Id.* at 1167 (quotations and citations omitted).

expectation of privacy in the trailer because he did not have permission from the owner to stay in the trailer. Defendant argues that "Haynes had a legitimate expectation of privacy in the trailer on the land of Space 8" because Prato gave Beebe authority over the trailer which was located on land Beebe was renting and Haynes was "an invited guest of Mr. Beebe on the land and in the trailer."[13] Haynes also presented evidence showing that Beebe retained Haynes' help in remodeling the trailer, gave Haynes permission to stay in the trailer, and gave Haynes a copy of the only key to the trailer. Based on the above facts, Haynes reasonably believed he had permission to stay in the trailer. While it is unclear from the record how long Haynes had been staying at the trailer, the record suggests that at the very least Haynes was an overnight guest of Beebe's. "It is well established that [Haynes'] status as an overnight guest is enough, in itself, to establish that he had an expectation of privacy in the [trailer.]"[14]

Having determined that Haynes had a legitimate expectation of privacy in the trailer, the court next decides whether Prato had authority to consent to the search of the trailer. The government has the burden of establishing the effectiveness of Prato's consent. "To meet its burden, the government must demonstrate that [Prato] had either actual or apparent authority to consent to the search."[15] To show actual authority to consent, the government must present either "persuasive evidence of both shared use and joint access to or control over a searched area" or evidence that Haynes expressly authorized Prato to give consent to the search.[16]

There is nothing in the record to indicate that Haynes expressly gave Prato authority to consent to a search of the trailer where he was staying. Nor has the government presented any evidence of shared use and joint access to or control over the trailer by Prato and Haynes. This matter is distinguishable from *United States v.*

---

[13] Doc. 69 at 1-2.

[14] *Davis*, 332 F.3d at 1167.

[15] *Id.* at 1169.

[16] *United States v. Matlock,* 4 F.3d 761, 764 (9th Cir. 1993).

*Yarbough*[17] because, although Prato owned the trailer, Prato did not have a key to the trailer, nor is there any evidence that he kept any of his belongings in the trailer or that he ever stayed in the trailer. Rather, the evidence shows that Haynes had a key to the trailer and sole use of the trailer while Beebe was gone.

However, even if Prato did not have actual authority to consent, the police officers had reasonable grounds to believe that Prato had apparent authority to consent to a search of the trailer.[18] "Under the apparent authority doctrine, a search is valid if the government proves that the officers who conducted it reasonably believed that the person from whom they obtained consent had the actual authority to grant that consent."[19] The Ninth Circuit has established a three-part test to determine whether a third party has apparent authority to consent to a search:

> First, did the searching officer believe some untrue fact that was then used to assess the extent of the consent giver's use of and access to or control over the area searched? Second, was it under the circumstances objectively reasonable to believe that the fact was true? Finally, assuming the truth of the reasonably believed but untrue fact, would the consent-giver have had actual authority?[20]

Here, the officers knew that Prato owned the Viskari Trailer Court. Moreover, Prato told them that he owned the trailer and that no one was living in the trailer. Based on the above information, the officers reasonably believed that Prato had actual authority to consent to a search of the trailer. When the officers commenced the consent search and found signs that someone may have been living in the trailer unbeknownst to Prato, the officers decided to apply for a search warrant.[21] During the initial consent search, the police officers saw in plain view a plastic baggie containing a white crystalline substance which later tested positive for methamphetamine. Because

---

[17] 852 F.2d 1522 (9th Cir. 1988).

[18] *Yarbough*, 852 F.2d at 1534.

[19] *United States v. Welch*, 4 F.3d 761, 764 (9th Cir. 1993).

[20] *United States v. Ruiz*, 428 F.3d 877, 880-881 (9th Cir. 2005).

[21] Transcript of Sept. 15, 2006, Evidentiary Hearing at p. 15-18, doc. 40.

Prato had apparent authority to consent to a search of a trailer he owned, the court will deny the motion to suppress the fruits of the consent search on February 21, 2006.

**Search on February 22, 2006**

As to the consent search conducted on February 22, 2006, the issues before the court are whether Haynes had a reasonable expectation of privacy in his duffel bag and whether Prato had authority to consent to a seizure of the duffel bag. Based on the evidence on record, it appears that when the officers initially entered the trailer to conduct the consent search on February 21, 2006, the duffel bag was closed and was sitting on top of a bed. After obtaining a search warrant, the officers searched the duffel bag, which contained a number of personal items including photographs and grooming items. The duffel bag also contained a Tupperware container wrapped in black electrical tape with the word "Slayer" written on it. The officers seized the Tupperware container while executing the search warrant. After executing and returning the search warrant, Detective Stevener spoke to the Sitka assistant district attorney, who asked him to go back to the trailer and seize the duffel bag.

On February 22, 2006, Detective Stevener spoke to Prato and asked for his consent to go back into the trailer. Stevener testified that he explained to Prato that he had left something in the trailer that he wanted to seize and then requested his consent to go do so.[22] Stevener further testified that during the conversation, Prato told him that he had not given anyone permission to live in the trailer, but had never told anyone that they could not live there either.[23] Based on Prato's consent, Stevener entered the trailer and seized the duffel bag and its contents. Stevener further testified that the photographs were seized at the time the black duffel bag was seized[24]

"'A person has an expectation of privacy in his or her private, closed containers' and 'does not forfeit that expectation of privacy merely because the container is located

---

[22]Doc. 40 at 25.

[23]Doc. 40 at 52.

[24]Doc. 40 at 26.

in a place that is not controlled exclusively by the container's owner.'"[25] The government does not argue, and the court does not conclude, that Haynes "had less of a legitimate expectation of privacy in his duffel bag that one would have in a suitcase, a purse, a briefcase or a cardboard box."[26] Rather, the Ninth Circuit has recognized that "people have the highest expectations of privacy" in containers which are used to store personal belongings.[27] Here, Haynes used the duffel bag to store his personal belongings.

The government also does not argue and the court finds no reason to suppose that Haynes' bag was open when the officers first saw the duffel bag.[28] In fact, Detective Stevener suggested that if the duffel bag had been open, he would have noted the Tupperware container and mentioned it during the search warrant proceeding, which he did not.[29] Moreover, Haynes shut the door to the room where the duffel bag was located and locked the door to the trailer before leaving the trailer. Based on the above circumstances, Haynes had a reasonable expectation that the items contained in the duffel bag would remain private.

Having found that Haynes had a reasonable expectation of privacy in his duffel bag, the court next considers whether Prato had authority to consent to a search and/or seizure of Hayne's duffel bag. "Authority to consent to a search of property does not necessarily translate into authority to search specific containers."[30] Consequently, the

---

[25] *Davis,* 332 F.3d at 1167 (quoting *United States v. Fultz*, 146 F.3d 1102, 1105 (9th Cir. 1998)).

[26] *Id.*

[27] *Fultz*, 146 F.3d at 1105.

[28] "[I]f the government were relying on some notion of plain sight, it would be required to produce evidence that the [duffel] bag was open. It did not do so." *Davis*, 332 F.3d at 1163 n.3.

[29] Doc. 40 at 66-67; Doc. 43-2.

[30] *Ruiz*, 428 F.3d at 881.

government has the burden of establishing that Prato had either actual or apparent authority to give consent to a search of the duffel bag.[31]

Because there is no evidence in the record to suggest that Prato had express authorization from Haynes to consent to a search of the duffel bag, "the government must prevail on a mutual use and joint access of control theory in order to demonstrate actual authority."[32]  The record here, as in *Davis*, does not in any way intimate that Prato had mutual use and joint access to or shared control over Haynes' duffel bag. Therefore, Prato lacked actual authority to consent to a search of the bag.

Finding Prato did not have actual authority to consent to the search of Haynes' duffel bag, the court addresses whether he had apparent authority to do so.  The relevant question here is not whether the officer reasonably believed that Prato had authority to consent to a search of the whole trailer, but whether the officer reasonably believed that Prato had actual authority to consent to a search of the duffel bag.[33]

On February 22, 2006, when Detective Stevener returned to the trailer to seize the black duffel bag, Stevener was aware that someone had been living in the trailer.[34] In fact, Stevener testified at the search warrant proceeding that he was applying for a search warrant out of caution because it appeared that the trailer was currently being lived in and "[t]he person who's living there may or may not have some sort of belief that they have the ability to live there."[35]  Stevener further testified that Prato did not know who was living there, but told the officers that Beebe had access to the trailer and that Beebe had another fellow working on plumbing.[36]  Knowledge of these facts made it

---

[31]*Davis*, 332 F.3d at 1169 (quoting *Fultz*, 146 F.3d at 1105).

[32]*Id.*

[33]*Id.* at 1170.

[34]Transcript of Application for State Search Warrant, exh. A, doc. 43.

[35]Transcript at 5, exh. A, doc. 43.

[36]Transcript at 6, 8, exh. A, doc. 43.

unreasonable for the officer to believe that Prato had actual authority to consent to the search and seizure of the duffel bag.

More to the point, the officer was aware of the actual facts that established Prato's lack of authority to consent to the search of Haynes' duffel bag.[37] Here, as in *Fultz*, apparently the officer believed that because the duffel bag was inside Prato's trailer, Prato's consent to search the trailer applied to the duffel bag. If so, the officer was mistaken as to the law. "An officer's mistaken belief as to the law, even if reasonable, cannot establish apparent authority."[38] Therefore, the apparent authority doctrine does not make the warrantless search and seizure of Hayne's duffel bag and its contents constitutional.

Because Haynes had a reasonable expectation of privacy in the duffel bag, and because the government failed to carry its burden of demonstrating that Prato's consent to search and seize the bag was valid, the court holds that the search and seizure of the duffel bag and its contents on February 22, 2006, was illegal. Consequently, the fruits of the search and seizure, including the photographs and other personal items contained in the black duffel bag on February 22, 2006, will be suppressed. The Tupperware container containing the black powder will not be suppressed because it was seized pursuant to the search warrant.[39]

### III.  CONCLUSION

For the reasons set out above, defendant's motion for reconsideration at docket 59 is **GRANTED IN PART** and **DENIED IN PART** as follows. The motion is **DENIED** as to the warrantless search of the trailer at Viskari Trailer Court Space 8 on February 21, 2006. The motion is **GRANTED** as to search and seizure of the duffel bag and its

---

[37] *Davis*, 332 F.3d at 1170; *Fultz*, 146 F.3d at 1106.

[38] *Davis*, 332 F.3d at 1170.

[39] *United States v. Ewain*, 88 F.3d 689, 693 (9th Cir. 1996) ("Once the police are lawfully searching in a place for one thing, they may seize another that is in plain view, if its incriminating nature is immediately apparent.")

contents on February 22, 2006, and the fruits of that search and seizure, including the photographs and other personal items, are **SUPPRESSED**.

DATED at Anchorage, Alaska, this 6th day of December 2006.

                                              /s/
                                JOHN W. SEDWICK
                        UNITED STATES DISTRICT JUDGE